UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) 18 CR 778 |
| v. | ) |
| | ) Honorable Manish S. Shah |
| KENNETH JOHNSON | ) |
| | ) |

**GOVERNMENT'S POSITION PAPER
AS TO SENTENCING FACTORS**

**I.  INTRODUCTION**

Over the course of 23 years, former Chicago Police Department Commander Kenneth Johnson stole approximately $363,064 from the Social Security Administration. In committing this crime, Johnson betrayed the public trust and stole from a program designed to assist the most vulnerable members of our community. For the reasons discussed below, the court should sentence Johnson to a term within the advisory Guidelines range of 18 to 24 months' imprisonment.

**II.  FACTUAL BACKGROUND**

"The hope behind [the Social Security Act] is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near." *Helvering v. Davis*, 301 U.S. 619, 641 (1937). To that end, the Social Security Administration administers the Old-Age, Survivors, and Disability Insurance program, which provides monthly benefit payments to qualified retired and disabled workers, their dependents, and eligible survivors. The program

1

is funded by payroll taxes and self-employment taxes. An individual's entitlement to receive these benefits is based on the amount of earnings contributions made to the program over the course of the insured worker's lifetime.

The Social Security Administration's Medicare Non-Utilization Project is a program integrity initiative that identifies elderly Social Security beneficiaries who have not used Medicare for three or more years. Johnson's mother, who was not utilizing Medicare and would have been 96 years old in 2017, was identified through the Medicare Non-Utilization Project. In November 2017, the Social Security Administration mailed a letter to Johnson's mother at her last known address, requesting that she contact the agency in order to confirm her continued eligibility for benefits. The Social Security Administration did not receive a response to its letter. As a result, the Social Security Administration suspended her benefit payments and referred the matter to the Office of the Inspector General. *See* PSR, ¶ 7.

The Office of the Inspector General determined that Johnson's mother died in May 1994, at the age of 72. The Social Security Administration was never notified of her death, which is why the agency continued to deposit her monthly Social Security benefits into a bank account that was held jointly by Johnson and his mother. Between June 1994 and November 2017, the Social Security Administration deposited a total of approximately $363,064 into Johnson's bank account. The Social Security benefits were the only funds deposited into the account. *See* PSR, ¶¶ 6, 8.

Johnson was not entitled to the Social Security benefits that were issued to his mother after she died in 1994. Although Johnson knew he was not entitled to any of these funds and despite the fact that Johnson was employed by the Chicago Police Department during this period, Johnson did not notify the Social Security Administration of his mother's death or return any of the $363,064 to the Social Security Administration. Nor did Johnson simply leave the Social Security funds in the account. Instead, over the course of 23 years, Johnson kept his deceased mother's name on the account and withdrew Social Security funds from the account on a regular and consistent basis. Johnson withdrew all but 59 cents of the Social Security funds that were deposited into the account during this period and used those funds for his own personal benefit. *See* PSR, ¶¶ 6, 8.

For example, Johnson used $398.50 of the Social Security funds to pay for a room at a Renaissance Hotel in Phoenix, Arizona, between December 5 and December 8, 2016. *See* PSR, ¶ 9; copies of the December 2016 bank account statement and the Renaissance Hotel purchase record are attached as Exhibit 1. Two months later, Johnson used $229.88 of the Social Security funds to pay for a February 7, 2017 flight from Chicago to Los Angeles and a February 10, 2017 return flight from Los Angeles to Chicago. *See* PSR, ¶ 9; copies of the February 2017 bank account statement and the flight purchase records are attached as Exhibit 2. While Johnson was in Los Angeles, the Los Angeles Police Department hosted a Crime Fighters Conference

3

attended by "senior police leaders from Chicago."[1] In the spring of 2017, Johnson withdrew Social Security funds from the account at an ATM located at the Chicago Police Department's 7th District Station, where Johnson was employed as the District Commander earning over $160,000 a year. *See* PSR, ¶ 8; copies of May 2017 and June 2017 bank account statements are attached as Exhibit 3.

In November 2018, Johnson was charged by information with theft of government funds, in violation of 18 U.S.C. § 641. In May 2019, Johnson pleaded guilty to stealing approximately $363,064 from the Social Security Administration, pursuant to a written plea agreement.

### III. GOVERNMENT'S POSITION ON SENTENCING

Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. In order to determine the sentence to impose, the court must consider the statutory factors listed in Section 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

The Sentencing Guidelines are the sole factor in Section 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of

---

[1] *See* http://www.lapdonline.org/february_2017/news_view/61791

minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor. 18 U.S.C. § 3553(a)(6); *see United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."). The Supreme Court created the advisory Guidelines system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker v. United States*, 543 U.S. 220, 264–65 (2005). The only way to prevent widespread unwarranted disparities is to give serious consideration to the Sentencing Guidelines.

The Sentencing Guidelines also generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46. The Commission is "a respected public body with access to the best knowledge and practices of penology." *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007). Furthermore, the Sentencing Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

The government agrees with the total offense level (15) and criminal history category (I) calculations set forth in the Presentence Investigation Report. PSR, ¶¶

15–30. The advisory Sentencing Guidelines range is 18 to 24 months' imprisonment. PSR, ¶ 58. Considering the Section 3553(a) factors, including the nature and circumstances of the offense as well as Johnson's history and characteristics, a within-Guidelines sentence of between 18 to 24 months' imprisonment is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide a just punishment for the offense, and afford adequate deterrence.

In mitigation, the government recognizes that Johnson does not have a prior criminal record and accepted responsibility for his offense conduct in this case. The government also recognizes that Johnson spent 32 years of his life serving the community as an officer with the Chicago Police Department, including as a District Commander in Englewood. However, these factors do not warrant a below-Guidelines sentence.

Johnson decided to use his mother's death as an opportunity to steal hundreds of thousands of dollars from a program designed to assist the most vulnerable members of our community. Social Security helps to provide about 65 million Americans, including over 44 million retired workers and over 8 million disabled workers, with economic security. Social Security is a major source of income for most of the country's elderly population, who paid into the system throughout their lives. *See* Exhibit 4.

The Social Security Administration's benefit programs depend on public support and funding to exist. Crimes like Johnson's reduce the overall level of public trust in, and support for, these programs. Society has a compelling interest in underscoring the seriousness of these types of crimes. A within-Guidelines sentence is sufficient, but not greater than necessary, to demonstrate that stealing from a government benefit program on which millions of people rely will be treated as a serious offense in the Northern District of Illinois.

This was not a crime of necessity or desperation. Nor was it an isolated incident or a momentary lapse in judgment. Despite having a well-paying job with the Chicago Police Department, Johnson decided to steal from Social Security every month for over 23 years. During that time, Johnson regularly and consistently withdrew funds from his mother's account, knowing that the only funds being deposited into that account were his deceased mother's Social Security benefits. The only reason Johnson's theft came to an end in 2017 was because one of the Social Security Administration's program integrity initiatives prompted the agency to confirm whether Johnson's mother was still alive. Otherwise, Johnson simply would have continued stealing from Social Security.

Although any theft from the Social Security program is a serious offense, it is particularly troubling here that Johnson committed this crime while he was employed by the Chicago Police Department. In stealing from Social Security, Johnson betrayed the public trust and let down thousands of Chicago police officers who risk their lives

7

every day protecting the public from crime. For over 23 of the 32 years that Johnson was employed by the Chicago Police Department to serve the public and enforce the law, Johnson was committing a federal crime every single month. Johnson even committed this crime at the 7th District Station where he was employed as the District Commander.

In July 2018, while discussing the Chicago Police Department's efforts to combat violence in Chicago, Johnson spoke about the importance of trust between the police and the community they protect: "This trust, it's not an easily won thing. Trust is easily broken and very difficult to win."[2] As former Chicago Police Department Superintendent Eddie Johnson observed when charges were brought in this case, "[I]f proven, these allegations erode the public's trust and tarnish his service to Chicago."[3] The allegations were true, and Johnson's commission of this crime not only tarnished his service but also eroded public trust in law enforcement—a trust that, as Johnson recognized, is "easily broken and very difficult to win."

Johnson's decision to steal from Social Security every month for over 23 years while employed by the Chicago Police Department, including by withdrawing crime proceeds at the police station he oversaw as the District Commander, reflects a troubling lack of respect for the law and a cavalier attitude about the nature and seriousness of his criminal conduct. Therefore, in addition to reflecting the

---

[2] *See* http://www.chicagotribune.com/news/breaking/ct-met-chicago-violence-first-half-2018-story.html
[3] *See* https://chicago.suntimes.com/2018/11/14/18482624/ex-chicago-police-commander-charged-with-stealing-360-000-from-social-security

8

seriousness of the offense and providing a just punishment for Johnson's criminal conduct, the sentence imposed in this case should serve to promote respect for the law.

Although the government does not believe there is a need for specific deterrence in this case, there is a substantial need to ensure that Johnson's sentence promotes general deterrence. "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). "Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it." *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994).

Given the far-reaching and complex nature of its benefit programs, the Social Security Administration faces a significant challenge in protecting these programs from theft and fraud. The harm Johnson caused would be exacerbated if others believed they could also steal over three hundred thousand dollars from Social Security without serious threat of significant punishment. *See United States v. Brisson*, 448 F.3d 989, 993 (7th Cir. 2006) ("Who knows how many more 'economic offenses' would be committed if the tempted knew that the punishment, if caught, would be little more than minimal?"). A within-Guidelines sentence of imprisonment

would send a clear message to the community at large that stealing from Social Security carries serious consequences.

The government suggests that, following his term of imprisonment, Johnson be placed on a within-Guidelines term of supervised release. The government recommends that mandatory conditions 1, 2, 3, 6, 7, and 9 should be applied. In order to facilitate supervision by the probation officer, thereby assisting in encouraging Johnson's compliance with the law and deterring him from committing future crimes, the government recommends that discretionary conditions 14, 15, 16, 17, and 18, and special condition 6, should be applied. In order to ensure that Johnson is behaving responsibly while on supervised release, thereby supporting his rehabilitation and reintegration into the community, the government recommends that discretionary condition 1, and special conditions 5, 6, 7, 8, and 10, should be applied. Lastly, in order to protect the public, including the probation officer, the government recommends that discretionary condition 8 and special condition 11 should be applied.

## IV. CONCLUSION

For the foregoing reasons, the government requests that the court sentence Johnson to a term of 18 to 24 months' imprisonment, followed by a within-Guidelines term of supervised release.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ Jared C. Jodrey
JARED C. JODREY
Assistant United States Attorney
United States Attorney's Office
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5358